[S. F. No. 10130. In Bank.—January 30, 1922.]

JAY WHEELER, Petitioner, v. HARRY W. HALL, as County Clerk, etc., Respondent.

[1] ELECTION LAW — COUNTY CHARTER — ELECTION OF FREEHOLDERS TO FRAME—SUFFICIENCY OF APPOINTMENT OF VERIFICATION DEPUTIES.— An appointment of verification deputies by candidates at an election of freeholders to prepare and propose a charter for the government of the county is not invalid because it consists of one paper signed by all of the candidates for members of the board of freeholders instead of separate papers signed by each for himself alone, and is in the singular number. The fact that it is signed by all of the candidates may make it also a joint appointment of them all, but it comes within the terms of the statute by the fact that, in legal effect, it is also a several appointment.

[2] ID. — RESIDENCE OF CANDIDATES. — The law does not require such appointment of verification deputies to state the residence of the candidates.

[3] ID.—SIGNING BY AGENT.—There is no provision of law that forbids the signing of such appointment of verification deputies by an agent.

[4] ID.—SINGLE NOMINATION PAPER.—There is no provision in the law that forbids several candidates for such an office, not exceeding the number to be elected, from having their names inserted in a single nomination paper and circulating it in that form.

[5] ID.—NAME OF OFFICE.—It is sufficient for the candidate or voters who sign the nomination paper in such case to designate the office by any form of words that will describe it with reasonable certainty, as this particular office is not given a special name in the constitution or in any statute.

[6] ID. — STATEMENT OF CITY — DIRECT PRIMARY LAW. — The direct primary law does not require that such nomination paper shall "state" that it was circulated in the city, town, or county named, but only that it shall "bear the name" of such city, town, or county. If the name is inserted in the caption or indorsed on the back of the nomination paper, it substantially complies with the law.

[7] ID.—AFFIDAVITS OF VERIFICATION DEPUTIES—AUTHORITY OF NOTARY. A notary public is not disqualified to administer the oaths to such verification deputies by reason of the fact that she signed the name of another to the appointment as his attorney in fact.

[8] ID.—FILING OF AFFIDAVIT OF CANDIDATE—PRIMARY ELECTION LAW INAPPLICABLE. — In view of the provision of the constitution authorizing the framing of charters for county government that the

188 Cal.—4

board of supervisors may order the holding of a special election for the purpose of electing the board of freeholders, which election shall be held not less than twenty nor more than sixty days after the adoption of the ordinance directing the holding of it, the requirement concerning the filing of an affidavit by the candidate prior to his name being placed on the ballot contained in the primary election law cannot be applied to the election of persons to serve on the board of freeholders to prepare a county charter.

[9] Id. — Eligibility of Candidates — Mandamus. — The clerk cannot raise an objection and refuse to place the names of candidates to the board of freeholders to prepare and propose a charter for the government of a county on the ballot because of his knowledge, information, or belief that a proposed candidate is not eligible to the office, and consequently it would not be cause for *mandamus* to compel him to omit such candidate from the printed ballot.

APPLICATION for Writ of Mandate to require the county clerk of Sacramento County to omit the names of certain persons from the official ballot on an election of freeholders to frame a county charter. Writ denied.

The facts are stated in the opinion of the court.

R. Platnauer for Petitioner.

Hugh B. Bradford, Theodore W. Chester, Fontaine Johnson and J. M. Inman for Respondent.

THE COURT.—Petitioner asked a mandate to compel the county clerk to omit from the official ballot to be used at a special election, to be held in the county of Sacramento, for the purpose of electing freeholders to prepare and propose a charter for the government of said county, the names on a certain list of persons offering themselves as candidates for members of said board and claiming to have been nominated for such office in the manner provided by the primary election law. Upon the hearing the court denied the application, holding the objections made by the petitioner to the proceedings for placing said names on the ballot to be untenable, as follows:

[1] 1. The first objection is that the appointment of verification deputies by the said candidates is invalid because it consisted of one paper signed by all of them, instead

of separate papers signed by each for himself alone. The appointment is in the singular number and declares that "I, the undersigned candidate for election to office of board of freeholders . . . hereby appoint the following registered and qualified electors of said county of Sacramento as verification deputies," etc. According to its grammatical construction this is a several appointment by each candidate of the persons named in the paper as verification deputies. The fact that it is signed by all of the candidates may make it also a joint appointment of them all, but it comes within the terms of the statute by the fact that, in legal effect, it is also a several appointment. In cases where two or more members of such a board or of any similar body are to be elected, we find nothing in the statute that forbids any number of candidates, not exceeding the whole number to be elected, from obtaining their nomination in this manner. This applies to numerous other objections based on the same fact and which will not be further noticed.

[2] 2. The objection that it fails to state the residence of the candidates is met by the fact that the law does not require it.

[3] 3. Another objection is that E. D. Turner's signature thereto appears as follows: "E. D. Turner, Isleton, California, by Mae E. Allen, his agent and attorney duly authorized." It must be assumed from this signature that Mae E. Allen had authority to sign Turner's name to that particular document. There is no provision in the law that forbids this method of signing such appointment, and, as that method of signature is sufficient for contracts, we see no reason why it should not be a sufficient compliance with the law on this subject.

[4] 4. There is no force in the objection that the nomination paper filed in behalf of said candidates is faulty because separate nomination papers were not circulated and signed for each of the candidates, and that a single nomination paper containing all their names should not have been circulated and signed by the voters. There is no provision in the law that forbids several candidates for such an office, not exceeding the whole number to be elected, from having their names inserted in a single nomination paper and cir-

culating it in that form. We, therefore, hold that it does not render the nomination paper defective.

[5]   5. It is claimed that the name of the office is not properly given in the nomination paper or in the appointment of verification deputies. The office is there designated as ''The office of Board of Freeholders.'' This particular office is not given a special name in the constitution or in any statute. It obviously must be sufficient for the candidate or voters who sign the nomination paper to designate it by any form of words that will describe it with reasonable certainty. We think the above-quoted phrase is a sufficient description to answer that purpose.

[6]   6. The next objection is in these words: ''It was circulated in the city of Sacramento and fails to state that fact,'' referring to the several sections of the nomination paper filed in the clerk's office. Subdivision 3 of section 5 of the direct primary law (Deering's Supp. 1917–19, p. 993) provides that each section of a nomination paper ''shall bear the name of the city or town, if any, and also the name of the county, or city and county, in which it is circulated, and only qualified electors of such county . . . shall be competent to sign such section.'' It does not require that the paper shall ''state'' that it was circulated in the city, town, or county named, but only that it shall ''bear the name'' of such city, town, or county. If the name was inserted in the caption or indorsed on the back of the nomination paper, it would substantially comply with this provision. The provision was evidently intended for the convenience of the county clerk when he compares the paper with the affidavit of registration and certifies as to the genuineness of the signatures, as required in subdivision 4 of section 5. He might perhaps at that time refuse to compare or certify to a paper not so complying with the law. But there being no allegation to the contrary, we must presume that the papers complied with the law in this particular in the manner suggested and that the clerk had made the certificate that the signatures counted by him are ''sufficient.'' The defect, if any there be, is not shown and the objection as made is not good.

[7]   7. The next objection to be noticed is that the affidavits of the verification deputies are sworn to before the

aforesaid Mae E. Allen, who was the attorney in fact signing
the name of E. D. Turner to the appointment of such
deputies. The petitioner insists that the fact that she signed
his name and was his attorney in fact in some manner dis-
qualifies her for administering an oath to any of the veri-
fication deputies. We are unable to see how that fact can
in any way operate to affect her official act as notary
public.

[8] 8. It is objected that the affidavits of the several
candidates do not comply with the provisions of subdivision
4 of section 5 of said primary law. That requirement is
that each candidate "shall file . . . his affidavit, stating
his residence, the street and number, if any; his election
precinct; that he is a qualified elector in the election pre-
cinct in which he resides; the name of the office for which
he is a candidate; that he will not before said primary
election withdraw as a candidate for nomination, and that,
if nominated, he will accept such nomination and not with-
draw and that he will qualify as such officer if nominated
and elected." The constitution authorizing the framing of
charters for county government provides that the board of
supervisors may order the holding of a special election for
the purpose of electing the board of freeholders, "which
said special election shall be held not less than twenty nor
more than sixty days after the adoption of the ordinance"
directing the holding of such election. (Art. XI, sec. 7½.)
The provision of the primary election law (subd. 4, sec. 5)
aforesaid requires that the affidavit there prescribed shall
be filed by the candidate not later than the twenty-fifth day
prior to the primary election. Section 1188 of the Political
Code provides generally that in the nomination of any can-
didate for any public office, to which the direct primary
law does not apply, the provisions of that law shall "sub-
stantially govern as to . . . the filing of the candidate's
affidavit."

It is obvious from the provisions of the constitution,
above quoted, that the requirement concerning the filing of
an affidavit by the candidate prior to his name being placed
on the ballot, contained in the primary election law, above
stated, cannot be applied to an election of persons to serve
on the board of freeholders to prepare a county charter.

Under the constitutior the supervisors may fix the time of the election not less than twenty days after the time the election is called. If, therefore, the election is to be held at any time less than twenty-five days after the passing of the ordinance directing it, no affidavits could be filed in compliance with the direct primary law. The office of freeholder to prepare a county charter, while important in many respects, is not of such a character that there is likely to be great competition therefor, nor any condition which creates the necessity of safeguarding the nomination by such requirements as are provided for in the primary election law. If the provisions of that law cannot apply to an election held before the expiration of twenty-five days from the time of calling the election, it cannot reasonably be held that it should apply to an election held at a later time. It either must apply to all elections for voting for freeholders or none. Since it cannot be applied to all, it is clear that it does not apply to any. The consequence is that all the objections to placing the names on the ballot, based on the alleged defects in the affidavits filed by the several candidates, must be held to be baseless.

[9] 9. Further objection is made on the ground that some of the candidates, so it is claimed, are not eligible to act on the board of freeholders because they have not been for at least five years qualified electors of the county. If this be true, it may be that such persons would not be eligible to serve on the board of freeholders. But we do not think that the objection can be raised in this way. The clerk is a mere ministerial officer and he is not required to ascertain whether or not the candidate who offers himself to be voted for at an election is or is not eligible to hold the office for which he stands. The several candidates are not parties to this proceeding and they have no opportunity to controvert the allegation. It is sufficient to say that we do not think the clerk can raise the objection and refuse to place the name on the ballot because of his knowledge, information, or belief that the proposed candidate is not eligible to the office, and consequently that it would not be cause for *mandamus* to compel him to omit such candidate from the printed ballot.

The foregoing comprise all the objections made to validity of the proceedings for placing the names of said persons on the ballot which we deem worthy of notice.

For the reasons given the writ of mandate was denied.

Shaw, C. J., Wilbur, J., Shurtleff, J., Lawlor, J., Sloane, J., and Waste, J., concurred.

Rehearing denied.

All the Justices concurred.